### 12316.  SPIRAKIS *v.* THE STATE.

LUKE, J. 1. The assignment of error in this case, that the judge failed to charge the jury on the defense of alibi, is without merit, since there was no timely written request for such a charge, and since there was no evidence of such clear and strong probative value as to alibi as would require instruction from the court upon such a defense. See *Paulk* v. *State,* 8 *Ga. App.* 704 (2), and cases cited.

2. There is no merit in the assignment of error upon the judge's charge as to good character.

3. The evidence authorized the conviction of the defendant, the verdict has the approval of the trial judge, and for no reason assigned was it error to overrule the motion for a new trial.

          *Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*
               Decided May 11, 1921.

Accusation of possessing intoxicating liquor; from city court of Waycross — Judge Crawley. February 24, 1921.

After conviction of William Spirakis of having whisky, he moved for a new trial, which was denied, and he excepted.

1. As bearing on the defense of alibi, the following appeared in testimony of witnesses introduced by the accused:

J. E. McClellan testified: " I was present with Mr. Warren the night we found some whisky down there close to Bill Spirakis's place. I saw the party who put the whisky there. He got it out of an automobile. It was right on the corner of the street. He put it on the second step as you go up the stairway. I couldn't swear point-blank who that man was; I thought it was Bill. . . We thought he went up stairs, and Warren and I immediately followed him up stairs. We carried the whisky up there. When we went up stairs we found old Pete and his wife. . . He came on down stairs right behind us. Warren also came back. When we got down there we found Bill in the store." Cross-examination: " To the best of my knowledge and belief it was Bill. The man didn't come out of the store with the whisky; he got it out of an automobile. He went right down the sidewalk. Mr. Warren and Mr. Cansinger were 'twixt me and the man that had the liquor. I thought it was Bill. I don't know whether I had the opportunity to see him that Warren did or not. The man who put the liquor on the steps did not turn around and come back to the store. I didn't see any man just after the liquor was put there turn around from the steps and go in the store."

Peter George testified: Direct examination: " Bill is my son-in-law. At the time it is alleged he had whisky he lived in my house. I lived there too. I was there the night when the officers came in my room. Mr. Warren and Mr. McClellan went up there together. Mr. Warren told me he found a can of liquor on the stairs. They said they were up there hunting for my son-in-law. They said they saw him come up the stairs and then came up after him; he asked me where he was, and I told him he ought to

be in the store, and we went down stairs and found him in the store. He showed me where they found the liquor; said they found it on the second step. . . There is no other stairway to that house, or any way to get down from up stairs, other than down that stairway."

Jake Clements testified: Direct examination: "I was in the store that night when the sheriff came in. I went in there to get a coca-cola, and asked the sheriff would he have one. At that time Bill was in there. I called him to serve me with a coca-cola, and when the sheriff came in I asked him to have one. I had been in there about two or three minutes before the sheriff came in. I don't remember exactly Bill's position with reference to the store; he was right in there. I remained in there about two or three minutes after the sheriff came in, it may have been five minutes. Mr. Warren nor Mr. McClellan did not come in there while I was there. The sheriff came in and walked in and went out the side door. . . When he got in there Bill was there inside the store. Bill served me with the drink. . . While I was there an automobile came up there near the corner of the building in front of the store on Nicholls street. I saw a hackman get out of the car; he got out there and came in and asked Bill for some cigars; Bill walked around and got the cigars and the hackman went back and got in the car and drove off. Just as the car left the sheriff came in. That was about a minute or two before the sheriff went in; just had walked in the door. The car stopped there just long enough for a man to stop there and get a cigar and go on off."

Among other instructions, the court charged the jury "that you have a right to consider evidence as to the good character of the defendant, and he alone can introduce such in evidence, the same being a substantive matter and subject to proof, and not merely whether the jury think his guilt is doubtful, under the other testimony in the case, but when such testimony of good character may itself generate the doubt; but if the guilt of the accused is made to appear to the satisfaction of the jury, they are authorized to convict regardless of the good character of the accused" — the specific complaint being of the words, "and he alone can introduce such in evidence," when used in connection with the other portions of said charge. Error was assigned: (a) Because it does not state a correct principle of law,

and was confusing to the jury, in that by using the words " and he alone can introduce such in evidence," the jury were reasonably led to believe that the defendant alone was permitted to introduce evidence as to his character, and that the State was not permitted to introduce evidence to show the bad character of the defendant. (b) Because under the facts of this case, defendant's counsel having argued to the jury that the defendant had put his character in issue and introduced evidence to show his good character, thus permitting the State to introduce evidence to rebut same, and the State failing to do this, was strong proof that the defendant was not the kind of man who would be guilty of the crime charged, the words used by the court in the portion of the charge complained of, to wit, " and he alone can introduce such in evidence," were confusing to the jury, and led them to believe that counsel's argument was not based on sound principles of law, and said charge practically eliminated from the consideration of the jury the question of the defendant's good character. (c) Because said charge was extremely harmful and prejudicial to the rights of the defendant.

*Wilson & Bennett,* for plaintiff in error.

*Benjamin G. Parks, solicitor,* contra.